### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| TYKIESHA WARD and JARVIS STEWART, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | 1:22-cv-03182-MHC |
| PIVOTAL RETAIL GROUP, LLC, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## WAGE AND HOUR SETTLEMENT AND RELEASE AGREEMENT

**1.** **Parties and Released Parties:**

This document sets forth the terms and conditions of the Agreement and Wage and Hour Release ("Agreement") by and between Tykiesha Ward and Jarvis Stewart (collectively, "Releasors") and Pivotal Retail Group, LLC ("the "Company"). Collectively, the Releasors and the Company may be referred to herein as "the Parties."

In consideration of the mutual covenants and agreements set forth below, the parties agree as follows:

**2.** **Payment and Consideration:**

A.  The Company will pay a total payment of Eighteen Thousand Dollars and Zero Cents ($18,000.00) as consideration as follows:

  i.  One check made payable to "Tykeisha Ward" in the gross amount of Four Thousand Four Hundred Forty-Eight Dollars and Three Cents ($4,448.03), less all applicable taxes and withholdings required by law, in compensation for Releasor Tykiesha Ward's claims for alleged unpaid wages and overtime, and which will be reported to Releasor Tyiesha Ward on a Form W-2;

-1-

      ii.      One check made payable to "Jarvis Stewart" in the gross amount of Five Thousand Four Hundred Thirty-Six Dollars and Forty-Seven Cents ($5,436.47), less all applicable taxes and withholdings required by law, in compensation for Releasor Jarvis Stewart's claims for alleged unpaid wages and overtime, and which will be reported to Releasor Jarvis Stewart on a Form W-2; and

      iii.      One check made payable to "Forester Haynie, PLLC" in the amount of Eight Thousand One Hundred Fifteen Dollars and Fifty Cents ($8,115.50), as consideration for the Releasors' alleged attorney's fees, costs, and expenses under the FLSA, and which will be reported to Releasors' counsel on a Form 1099.

    B.    The checks set forth above will be mailed to Releasors' counsel, Forester Haynie, PLLC, Attn: Colby Qualls, 400 N. Saint Paul, St. Suite 700, Dallas, Texas 75231. Executed W9 forms from both Releasors and their counsel are necessary to issue the above payments in Paragraphs 2(A)(i), (ii) and (iii).

    C.    Releasors acknowledge and agree that the payments set forth above representing unpaid overtime wages fairly compensate them for alleged minimum, overtime and other wages allegedly owed to them by the Company.

**3.**    **<u>Motion to Approve Settlement and Effective Date</u>**

    A.    For and in consideration of the payments and benefits specified in paragraph 2, and other good and valuable consideration, Releasors agree to dismiss with prejudice their Complaint that currently is pending in the United States District Court for the Northern District of Georgia, Atlanta Division, styled Tykiesha Ward and Jarvis Stewart v. Pivotal Retail Group, LLC, Civil Action File No. 1:22-cv-03182-MHC ("the Civil Action").

    B.    Following their execution of this Agreement, Releasors and the Company agree to jointly file in the Civil Action the Joint Motion to Approve Settlement Agreement and Dismiss Claims that is attached to this Agreement as Exhibit 1 ("the Joint Motion"), attaching thereto an executed copy of this Agreement to be filed in the court record.  The parties will cooperate and take all necessary steps to effectuate final judicial approval of the Joint Motion.

      C.      This Agreement shall become effective and binding upon Releasors upon their execution of the Agreement and shall be irrevocable.  The Agreement shall not become effective, however, with respect to the Company, and the Company shall have no obligation to make the payments set forth in paragraph 2, unless and until such date ("the Effective Date") as the Court approves in its entirety the Joint Motion and enters an order approving this Agreement and dismissing the Civil Action with prejudice.  If the Court does not grant the Joint Motion or approve this Agreement or dismiss the Civil Action with prejudice for any reason within 180 days from the submission of the Joint Motion, then this Agreement will not be binding upon the parties and will be null and void.

      D.      Payment of the amounts in Paragraphs 2(A)(i) – (iii) shall take place within 21 days after the Court approves in its entirety the Joint Motion and enters an order approving this Agreement and dismissing the Civil Action with prejudice.

      E.      The term "Releasees" as used herein shall be defined as the Company, and all of its corporate parents, subsidiaries, divisions, affiliated entities and franchisors and their current and former officers, directors, officials, employees, shareholders, servants, agents, officials, insurers, and attorneys in their official and individual capacities, together with their predecessors, successors, and assigns, both jointly and severally.

**4.**      **<u>Release of Claims</u>:**

      For and in consideration of the payments specified in paragraph 2, and other good and valuable consideration, Releasors do knowingly and voluntarily release and forever discharge the Releasees from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, damages, judgments, claims, and demands whatsoever, in law or in equity, whether known or unknown, which the Releasors ever had, now have, or may or might in the future have against the Releasees based on any acts, omissions, transactions, or occurrences whatsoever from the date of the beginning of the world to the effective date of this Agreement, that arise by reason of or in any way are connected with, or which are or may be based in whole or in part on, or do or may arise out of, or are or may be related to or with: (a) the Civil Action; (b) any claim for unpaid wages, minimum wages, overtime, or any other form of wages or compensation or reimbursement; and (c) any claims for attorneys' fees, costs, or expenses related to the Civil Action or any claim for unpaid wages, minimum wages, overtime, or any other form of wages or compensation or reimbursement.

5. **Covenant Not To Sue:**

Unless otherwise prohibited by law, Releasors agree, covenant, and warrant to the Company that neither Releasors, nor any person, organization, or other entity acting on Releasors' behalf have or will: (a) sue or cause or permit suit against the Releasees upon any claim released by this Agreement; (b) participate in any way in any such suit or proceeding; or (c) execute, seek to impose, collect or recover upon, or otherwise enforce or accept any judgment, decision, award, warranty, or attachment upon any claim released by this Agreement, with the exception that Releasors may seek to impose, collect or recover upon, or otherwise enforce this settlement if Releasees do not make payment as described in Paragraphs 2(A)(i)-(iii) and 3(D).  Unless otherwise prohibited by law, in the event of any claim by an agency or federal or state government or a claim by any person against the Releasees for conduct by the Releasees against Releasors for any conduct arising prior to the effective date of this Agreement, Releasors waive their right to personally recover any monetary amount in any such proceedings, and Releasors further agree and covenant to return to the Company upon receipt any sums paid to or otherwise received by Releasors pursuant to any such claim.

6. **Non-Admission:**

Releasors acknowledge that the consideration provided for this Agreement, including the payments and benefits set forth in paragraph 2, do not constitute any admission of liability or wrongdoing on the part of the Company or any of the Releasees, by whom any and all liability or wrongdoing of any kind is expressly denied.  The Company and Releasees specifically deny any liability to Releasors for any unpaid overtime, liquidated damages, or other alleged compensation due under the FLSA or any other applicable wage payment law, but have entered into this Agreement solely for convenience and the avoidance of litigation.  This Agreement shall not be deemed an admission of liability, wrongdoing, or a violation of any law, rule, regulation or order, of any kind, such being expressly denied.

7. **Limited Non-Disparagement**

A.   Subject to the exceptions and rights enumerated in the release above, and to the extent permissible by law, the Releasors agree that the Releasors will not make any comments to any other person or entity, including both employees of the Employer and persons who are not employees of the Employer, and including comments made on the Internet (whether through social websites

-4-

such as Facebook, Twitter, LinkedIn, SnapChat, YouTube, TikTok, Instagram, and GlassDoor.com, or otherwise), that are critical and/or derogatory in nature about the Employer, its operations, or its employees. This provision does not, however, preclude the Releasors from discussing the nature of the claims asserted in this Litigation and the factual basis for those claims with their respective spouses, financial advisors, or counsel.

B.     The Releasees will instruct Lauren Bishop and Susan Kyle not to make any comments to any other person or entity, including both employees of the Employer and persons who are not employees of the Employer, and including comments made on the Internet (whether through social websites such as Facebook, Twitter, LinkedIn, SnapChat, YouTube, TikTok, Instagram, and GlassDoor.com, or otherwise), that are critical and/or derogatory in nature about the Releasors.

**8.     Successors and Assigns:**

This Agreement shall be binding upon Releasors and Releasors' heirs, executors, administrators, assigns, successors, beneficiaries, employees, and agents, and shall inure to the benefit of the Releasees and their predecessors, successors, and assigns.  Releasors represent and warrant that they have not assigned, sold, or otherwise conveyed any claim released herein.

**9.     Modification and Severability:**

This Agreement may not be altered, amended, modified, or otherwise changed in any respect or manner whatsoever except by a writing duly executed by the Releasors and authorized representative of the Company. In the event a portion of this Agreement is held to be legally invalid by a competent court of law, the invalid portion shall be stricken and all other obligations shall remain valid and mutually binding on the parties and not be affected thereby.

**10.    Entire Agreement**

This Agreement constitutes the entire agreement between the Releasors and the Company and supersedes all prior and contemporaneous agreements, representations, and understandings.

**11.    Miscellaneous:**

A.      This Agreement is executed by Releasors knowingly and voluntarily and are not based upon any representations or statements of any kind by any person as to the merits, legal liabilities, or value of Releasors' claims.  Releasors acknowledge that no promise or inducement has been offered or made except as set forth in this Agreement.  Releasors further acknowledge that consideration for this Agreement consists of financial payments and benefits to which Releasors otherwise have no legal entitlement.

B.      Releasors acknowledge and agree that they have had reasonable and sufficient time in which to consider whether or not they wish to enter into this Agreement, and that their decision to do so is made knowingly, voluntarily, and without coercion.  Releasors acknowledge that they have the right and opportunity to consult fully with legal counsel or any other advisor of their choice prior to signing this Agreement, and that Releasors are advised to consult with legal counsel prior to signing this Agreement.  In that regard, Releasors acknowledge that, before signing this Agreement, Releasors have read and understands each paragraph herein.

C.      Releasors acknowledge that neither the Releasees nor their attorneys make or have made any representation as to the tax consequences, if any, of the provisions of this Agreement.  Releasors agree to pay, and acknowledge that they remain fully and solely liable to pay, all federal, state, and local taxes, if any, which are required by law to be paid with respect to this settlement. The Releasors further agree to indemnify and hold harmless the Releasees from any claims, demands, deficiencies, levies, assessments, executions, judgments, or recoveries by any government entity against the Company or any of the Releasees for any amounts claimed due on account of this Agreement or pursuant to claims made under any federal or state tax laws and from any costs, expenses, or damages sustained by the Company or any of the Releasees by reason of any such claims, including any amounts paid as taxes, attorneys' fees, deficiencies, levies, assessments, fines, penalties, interest, or otherwise.

D.      Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

E.      The headings contained in the Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement.

F.      This Agreement may be executed electronically and in multiple counterparts and all counterparts shall constitute one agreement binding on each of the parties hereto, regardless of whether each party hereto is a signatory to the same counterpart. Electronic, fax, and/or scanned signatures in lieu of original signatures are acceptable.

**IN AGREEMENT HERETO**, Releasors and the below representative of the Company do hereby set their hand and seal.

| **THE RELEASORS** | **PIVOTAL RETAIL GROUP, LLC** |
|---|---|
| _____ | By: _____ |
| Tykiesha Ward | Lauren Bishop, President |
| _____ | _____5/8/24_____ |
| Date | Date |
| _Jarvis Stewart (May 6, 2024 18:02 EDT)_ | |
| Jarvis Stewart | |
| 05/06/2024 | |
| Date | |